# In the United States District Court for the Western District of Texas

| | |
|---|---|
| JOYCE D. MENDEZ | § |
| | § |
| v. | §   SA-10-CV-750-XR |
| | § |
| FEDERAL RESERVE BANK OF DALLAS | § |

## ORDER

On this date the Court considered the United States Magistrate Judge's Memorandum and Recommendation in the above-numbered and styled case (docket no. 36) and Plaintiff's objections thereto (docket no. 38). After careful consideration, the Court will accept the Magistrate Judge's Memorandum and Recommendation and grant the Defendant's motion for summary judgment (docket no. 17).

Where no party has objected to the Magistrate Judge's Report and Recommendation, the Court need not conduct a de novo review of it. *See* 28 U.S.C. §636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made"). In such cases, the Court need only review the Report and Recommendation and determine whether it is either clearly erroneous or contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th

Cir. 1989). On the other hand, any Report or Recommendation that is objected to requires de novo review. Such a review means that the Court will examine the entire record and will make an independent assessment of the law. The Court need not, however, conduct a de novo review when the objections are frivolous, conclusive, or general in nature. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

## Background

Plaintiff, a former employee of the Defendant, brings this suit alleging that she was discriminated against in violation of Title VII (race/national origin discrimination and sex discrimination) and the Age Discrimination in Employment Act (ADEA). Plaintiff alleges that she began her employment with Defendant in 1986, performed satisfactorily, and received various promotions. She alleges that in March 2008, David Sowell became her supervisor and thereafter denied her training opportunities, increased her workload, and began to "micro manage" her work. She also alleges that in May 2009, she became aware of a management position available in Dallas, Texas. Because the position was located in Dallas and she was unable to relocate from San Antonio because of family issues, she ultimately did not apply for the position.[1]

She further alleges that on May 27, 2009, she was notified that her work schedule would be changed from the day shift to the night shift. On June 2,

---

[1] Plaintiff complains that on June 16, 2009, another female employee located in San Antonio, Kimberly Moore, was selected for the Dallas supervisor position, but was allowed to remain working in San Antonio. Plaintiff alleges that she contacted her former supervisor, Mario Garcia, and was told by him that the supervisor position was only open for Dallas.

2

2009, she filed a charge of discrimination with the EEOC alleging sex and national origin discrimination and retaliation. She filed an amended charge of discrimination on July 31, 2009, alleging that she was further retaliated against on July 15 when she received a "bad annual evaluation" and that on July 28, she was not selected for a Cash Administrator position posted for San Antonio.

From November 16, 2009 through January 10, 2010, Plaintiff was on FMLA leave. On January 22 and 29, 2010, she filed an additional amended charge of discrimination complaining that she was retaliated against when she was denied holiday pay during her FMLA leave and told to provide FMLA certification forms.

On February 1, 2010, the "Office of Compliance" directed Plaintiff to position her computer monitor so that its contents could not be readily viewed by others. Her supervisors also directed her to reposition her desk. Plaintiff objected to this request and filed another amended charge of discrimination on February 5. During April, disagreements occurred between Plaintiff and other employees. On June 7, Plaintiff was alleged to have violated a policy that required that three employees be present in a "MMR environment." She thereafter sought medical leave for depression. Upon her return to work, she was discharged. On June 16, she filed an additional charge of discrimination alleging retaliation.

## Defendant's Motion

### Training Claim

With regard to the denial of training claim, Plaintiff identified two

3

instances Time Project Management Training in October 2009 and BPS 300[2] in April 2009). With regard to the Time Project Management Training, Mr. Sowell did not select Plaintiff for training because he was mistakenly told that Plaintiff had earlier attended this training. Defendant asserts that she was later provided the opportunity to attend another session, but that she failed to register for the alternative session. With regard to the BPS 300 training, Patrick Garza was selected to attend because management determined that he was more in need of this session because he was relatively new to the cash department. Defendant argues that the denial of BPS 300 training did not impact Plaintiff's salary or promotion prospects and does not rise to an adverse personnel act.

**Night Shift Claim**

Defendant asserts that Mr. Sowell contemplated initiating a pilot program that would require supervisors to work a night shift on a rotating basis. Mr. Sowell discussed this proposal with Plaintiff, Ross Garcia (Hispanic male/born 1965) and Yolanda Luna (Hispanic female/born 1956). The program was never implemented and accordingly Defendant argues that no adverse employment act occurred.

**Dallas Manager Position**

Defendant asserts that Kimberly Moore (white female/born 1969) was selected for this position and that Plaintiff never applied for the position.

---

[2] Also referenced as "currency technology office training."

4

Inasmuch as Plaintiff never applied for the promotion, Defendant asserts that Plaintiff does not establish a prima facie case of discrimination. Defendant asserts that assuming Plaintiff spoke with her former manager about the Dallas position, the hiring manager was never informed of Plaintiff's interest in the position. Defendant further asserts that during her interview, Ms. Moore raised the possibility of performing the job from San Antonio. In addition, Defendant asserts that Plaintiff fails to establish any sex discrimination case because the individual selected for the position was female. In addition, it argues that there is no evidence that the decision maker for this selection was aware that Plaintiff was interested in applying, there is no evidence of national origin/race discrimination or age discrimination. The decision maker in this selection is older than Plaintiff.

### Negative 2009 Performance Evaluation

Defendant concedes that Plaintiff's evaluation expressed "candid feedback" about Plaintiff's performance not meeting expectations. Despite that criticism, Defendant states that Plaintiff received a merit increase. Defendant further asserts that it received Plaintiff's amended EEOC charge the day after Plaintiff's evaluation was delivered. Defendant further argues that there is no evidence that national origin, race, age, or retaliatory motive played any role in the evaluation afforded Plaintiff. It further argues that the receipt of a negative performance evaluation, with no impact on wages, fails to rise to an adverse employment action.

### Cash Administration Supervisor position

Defendant argues that this was a lateral move for Plaintiff. She would not have received any increase in salary. Accordingly, it argues that Plaintiff did not suffer any adverse employment action. Patrick Garza (Hispanic male/born 1973) was selected for the position. Defendant argues that Plaintiff fails to establish race or nation origin discrimination as the candidate selected was Hispanic. It further argues that Plaintiff fails to establish that she was "clearly better qualified."

**FMLA issues**[3]

Defendant argues that Plaintiff was asked to supply additional documentation regarding her leave because she was originally expected to return to work on December 28, 2009, but did not return until January 11, 2010. Her physician note did not contain any reason for the absence. The Defendant further asserts that designation of the leave as FMLA rather than holiday did not result in any loss of wages to Plaintiff, and in an attempt to appease Plaintiff it changed the designation in any event. Accordingly, it argues that Plaintiff fails to establish that she suffered any adverse employment act.

**Plaintiff's discharge**

Defendant argues that in May 2010, another employee was charged with stealing monies. In response the Federal Reserve Bank reviewed its security procedures and implemented a policy that required that three employees be present in the multi-machine room. Plaintiff allowed work to continue while

---

[3] Plaintiff has not asserted any claim arising under the FMLA. She merely claims these acts were actionable retaliatory acts under either Title VII or the ADEA.

6

only two employees were present. Accordingly, Defendant contends that Plaintiff was discharged for a legitimate, non-discriminatory and non-retaliatory reason. With regard to Plaintiff's argument that a male supervisor, Ross Garcia, was not discharged for allowing the original theft to take place, Defendant responds that Plaintiff was discharged for not following the security policy that was implemented after the thefts became known. Accordingly, the Garcia incident and Plaintiff's are not "similarly situated."

## Magistrate Judge's Recommendation

With regard to the training claims, the Magistrate Judge found that Plaintiff's retaliation cause of action should be dismissed because Plaintiff did not establish that the denial of training was materially adverse.[4] Alternatively, the Magistrate Judge found that Plaintiff failed to establish that retaliation was a motivating factor for the denial of training. There were limited spaces available, and Plaintiff was allowed to attend on alternative dates.

With regard to the allegations of increased workload, lack of guidance and "micro management" claims, the Magistrate Judge concluded that these claims were not "adverse employment actions" sufficient to establish her discrimination claims. Alternatively, the Magistrate Judge concluded that Plaintiff failed to establish that race, national origin or age was a motive.[5]

---

[4] It is unclear whether Plaintiff is asserting that she was denied training because of her national origin, race or age.

[5] It is unclear whether Plaintiff is asserting that she was retaliated against by increasing her workload, allegedly denying her guidance, and allegedly being "micro managed."

7

With regard to the night shift claim, the Magistrate Judge recommended dismissal of this claim as frivolous because Mr. Sowell spoke to all supervisors about the prospect of a shift change, but he never implemented any shift change to either Plaintiff or any other supervisor. Accordingly, the Magistrate Judge concluded that no adverse employment act occurred to establish Plaintiff's retaliation claim.[6]

With regard to the Dallas manager position, the Magistrate Judge concluded that Plaintiff failed to establish a prima facie case of discrimination because Plaintiff never applied for this position.[7]

With regard to the negative 2009 performance evaluation, the Magistrate Judge concluded that Plaintiff's retaliation claim fails because it did not constitute an adverse employment action. Assuming that a negative performance evaluation with no negative financial impact on Plaintiff could constitute an adverse employment act, the Magistrate Judge also concluded that Plaintiff failed to establish any causal connection or nexus between her 2009 performance evaluation and her previous EEOC activity. The Magistrate Judge concluded that Defendant had articulated non-retaliatory reasons for her poor evaluation, that Plaintiff did not deny that she engaged in verbal altercations with peers and engaged in acts of insubordination with her supervisors, and accordingly failed to establish pretext.

---

[6] It is unclear whether Plaintiff is asserting that her night shift claim was also being asserted as a discrimination claim under Title VII or the ADEA.

[7] It is unclear whether Plaintiff is asserting that denial of this position was retaliation.

8

With regard to the cash administrator supervisor position, the Magistrate Judge concluded that Plaintiff failed to establish a discrimination claim because this lateral transfer was not an adverse employment action. Likewise, the Magistrate Judge concluded that Plaintiff failed to establish her retaliation claim because denial of this position was not materially adverse under *Burlington Northern*. In the alternative, the Magistrate Judge concluded that Plaintiff also failed to establish any causal connection or nexus between the denial of this position and any protected activity. In addition, the Magistrate Judge concluded that Plaintiff failed to establish that she was "clearly better qualified" than the individual selected.

With regard to the retaliation claim associated with her FMLA leave, the Magistrate Judge concluded that the request for Plaintiff to provide recertification was not materially adverse under *Burlington Northern*. With regard to the retaliation claim associated with the reconfiguration of her office, the Magistrate Judge concluded that the request for Plaintiff to move her computer monitor and desk was not materially adverse under *Burlington Northern*.

With regard to Plaintiff's discharge, the Magistrate Judge concluded that Plaintiff failed to establish that the Defendant's articulated reason for the discharge was a pretext for either discrimination or retaliation. The Magistrate Judge concluded that Defendant had articulated non-retaliatory reasons for Plaintiff's discharge and she failed to establish pretext. The Magistrate Judge

9

also concluded that the comparator referenced by Plaintiff (Garcia) did not engage in conduct that was "nearly identical" to the conduct engaged in by Plaintiff.

With regard to any 42 U.S.C. § 1981 claims that may have been articulated by Plaintiff, the Magistrate Judge concluded that any such claim failed for the reasons stated in addressing her Title VII claims.

**Plaintiff's Objections to the Magistrate Judge's Recommendation**

Plaintiff asserts the following objections: (1) Defendant's reasons for her discharge were false; she did not violate the "New Practices in High Speed" policy; discrimination was the reason for her termination; Ross Garcia's conduct was identical to the infraction she allegedly committed, but was not discharged; (2) Plaintiff has raised a genuine issue of material fact as to whether the proffered reason for her discharge is a pretext for retaliation;(3) Plaintiff has raised a genuine issue of material fact regarding her § 1981 claim because Defendant's alleged reason for her discharge was pretextual; and (4) Plaintiff's poor 2009 performance appraisal does rise to the level of a materially adverse employment act to establish a retaliation claim.

## Analysis

With regard to all of the Plaintiff's allegations where she did not object to the Magistrate Judge's Recommendation, the Court concludes that the Magistrate Judge's Report and Recommendation is not "clearly erroneous or contrary to law." Accordingly, the Court adopts those portions of the magistrate Judge's Report. The Court next turns to a de novo review of those claims that

have objections noted.

## Summary Judgment Standard

Summary judgment is proper only when the movant can demonstrate that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. To defeat a properly pled motion for summary judgment, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The court must resolve factual controversies in favor of the nonmoving party. However, the nonmoving party cannot satisfy its burden merely by establishing "some metaphysical doubt as to the material facts,"[8] by conclusory allegations in affidavits, or by only a scintilla of evidence.[9]

### Title VII/Section 1981 Discrimination Claims regarding her discharge

Plaintiff must establish that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some other

---

[8] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

[9] *Little*, 37 F.3d at 1075 (*quoting Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)).

11

adverse employment action; and (4) was replaced with someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.[10] If the plaintiff makes this prima facie showing, the burden shifts to her employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.[11] "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."[12] If the employer articulates a valid reason for the adverse employment action taken against the plaintiff, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory ... purpose."[13]

Plaintiff is very unclear in either her Complaint or her response to the motion for summary judgment whether she is asserting that her discharge was because of her sex or because of her national origin/race, or both. In her response, she only asserts that she was treated less favorably than another similarly situated employee, who is a male (Ross Garcia). Plaintiff fails to establish that she was purposefully discriminated against because of her race/national origin. Accordingly, summary judgment is proper as to those Title VII/section 1981 race/national origin claims. *Wesley v. General Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 216 (5th Cir. 2011).

---

[10] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

[11] *Id.* at 557.

[12] *Id.*

[13] *Id.*

With regard to her Title VII sex discrimination claim, as indicated above Plaintiff claims that a male (Ross Garcia) is "similarly situated", was not discharged, and accordingly summary judgment should be denied.

A plaintiff must identify individuals outside the protected class that were "similarly situated" or in "nearly identical" circumstances who were treated more favorably. *Wheeler v. BL Development Corp.*, 415 F.3d 399, 406 (5th Cir. 2005); *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 405–06 (5th Cir. 1999). In this case, Plaintiff was discharged for allowing two employees to work in a MMR environment when policy required the presence of at least three employees.[14]  This policy was put in place after thefts from the Bank were detected.  Plaintiff was not "similarly situated" or in "nearly identical" circumstances as Mr. Garcia. Defendant articulated a valid reason for Plaintiff's discharge and Plaintiff has failed to establish pretext.  Accordingly, summary judgment is proper on behalf of the Defendant on Plaintiff's Title VII sex discrimination claim.

## Title VII/section 1981 retaliation claim

As stated above, Plaintiff brings two objections regarding her Title VII retaliation claims: (1) the poor 2009 performance appraisal does rise to the level of a materially adverse employment act and (2) her discharge was in retaliation

---

[14] Plaintiff asserts that, while "understanding that she could not operate in a multiple-machine environment with two employees," she "shut down two of the four machines and moved the available two team members to one side of the room." Contrary to Plaintiff's argument, this conclusory statement is not sufficient to create a fact issue.  Implicitly Plaintiff admits that she allowed two employees to run at least one machine in the MMR environment in violation of Bank policy.

13

for her prior EEO activity.

    1.    Performance Evaluation

The issue of whether a negative performance evaluation can rise to the level of a materially adverse employment act is unsettled. In the retaliation context a materially adverse action "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

It appears that a negative performance evaluation (standing alone with no other impact) does not rise to this standard.[15] In this case, however, Plaintiff has produced competent summary judgment evidence that the negative evaluation was used in ranking Plaintiff's application for the cash administrative supervisor position. Based in part on her negative performance evaluation, Plaintiff was denied this lateral position. The position that Plaintiff sought, however, was at best a lateral move. Plaintiff presents no evidence that her evaluation affected

---

[15] *See Goring v. Board of Sup'rs of Louisiana State Univ. Agr. & Mechanical College*, 414 Fed. App'x 630, 633 (5th Cir. 2011)("Goring argues inter alia that LSU retaliated against her by undertaking a 'post-tenure review' of her classroom teaching. LSU has countered, however, with unrebutted evidence that the law school chancellor initiated this review—which has not resulted in any alteration in the terms or conditions of Goring's employment—because of vehement complaints from a number of students about Goring's performance in one of her classes. Thus, this 'post-tenure review' obviously falls short of the Burlington Northern standard, given that a reasonable employee would not expect to be insulated from review of her questionable job performance simply because she filed a prior complaint of discrimination."); *Thomas v. Kent*, 401 Fed. App'x 864, 866 (5th Cir. 2010)("Thomas argued to the district court that Salley, her supervisor, filed a grievance against her stating his opinion that she was being insubordinate and intentionally vexatious in her complaints about not being given the CSIU job. She argued that the grievance was in retaliation for her complaints. On our de novo review, we conclude that the summary judgment evidence reveals that the grievance had no adverse effect on Thomas. It did not go in her personnel file or otherwise have any adverse effect on her employment. To amount to retaliation, Burlington Northern requires that the action must be such that it would 'dissuade a reasonable worker from making or supporting a charge of discrimination.' *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Thomas produced no summary judgment evidence that this completely internal memorandum had such an effect.").

her opportunities for career advancement. It is unclear given this background whether these facts constitute an actionable adverse employment act. *See Murray v. Louisiana-Division of Admin. Office of Planning*, 439 Fed. Appx. 349, fn. 2 (5th Cir. 2011). However, even assuming that Plaintiff has established a fact issue as to whether her performance evaluation "might have dissuaded a reasonable worker" from filing a charge of discrimination, as discussed below, Plaintiff was discharged for a legitimate, non-retaliatory reason. The negative performance evaluation and the denial of the supervisor position resulted in no actual damages to Plaintiff.

    2.    Discharge

A claim for retaliation operates under the traditional burden-shifting framework. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007). A plaintiff alleging retaliation must establish a prima facie case that (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.* If a plaintiff makes a prima facie case, a defendant employer can shift the burden back to the plaintiff by articulating a nonretaliatory rationale for its action. *Id.* at 557. A plaintiff then must rebut each rationale the employer provides. *Id.* Summary judgment for an employer is proper when a plaintiff presents "no evidence of retaliation save temporal proximity" to rebut defendant's proffered reason and there exists overwhelming evidence that plaintiff was fired because

of poor performance and improper work conduct. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

In this case it is undisputed that Plaintiff participated in activities protected by Title VII and that her employer took an adverse employment action (discharge) against her. Defendant disputes that a causal connection exists between the protected activities and the adverse employment action. In addition, Defendant asserts that it discharged Plaintiff for a legitimate, non-retaliatory reason, i.e. she violated a policy meant to safeguard th bank from thefts.

It is undisputed that the Bank implemented a policy in April 2010 that stated: "We will no longer run with only two individuals in the MMR environment at any time...." It is undisputed that Plaintiff was aware of the policy. On June 7, 2010, two employees in Plaintiff's department called in sick. During the lunch break one employee left for lunch. This resulted in the MMR (multi-machine room) having only two employees in the room. Notwithstanding that this violated the new policy, Plaintiff allowed two employees to operate two machines in that room.

Plaintiff attempts to establish pretext by arguing a number of items. Again, she asserts that Mr. Garcia was not discharged for allowing his employees to commit a theft. Again, this comparison fails. The reason for the new policy was to prevent another theft. The policy was implemented after the Garcia situation.

Secondly, Plaintiff attempts to rely upon an email to establish pretext. See Exhibit 25 to Plaintiff's Response to Defendant's motion for summary judgment (dkt. no. 20). The email was disclosed to Plaintiff by the EEOC in response to a FOIA request. The email was inadvertently produced by Defendant to the EEOC during its investigation of the charges. The email was a communication between a manager for Defendant and Bank's counsel. The Bank has filed a motion to compel its return and a motion for sanctions against counsel for failing to return the document once the Bank discovered the inadvertent production had taken place. See doc. No. 24.

The Court concludes that the email does not provide any evidence of pretext. It merely summarizes complaints regarding how Plaintiff was allegedly treating co-workers. The manager merely posits to the Bank's counsel that if the EEOC saw the documentation regarding Plaintiff's behavior whether the EEOC "would come to a decision." The email does not suggest that Plaintiff should be retaliated against for pursuing protected EEO activity. Because the email does not serve as any evidence of pretext, the Court will defer ruling on whether Plaintiff's counsel violated any ethical obligations in failing to return the document to the Bank once such a request was made.[16]

Finally, Plaintiff attempts to argue that she did not either understand the policy, the Bank failed to train her properly about the new policy, or that she did not violate the new Bank rule. Plaintiff argues that because she ran only one

---

[16] Defendant's motion to compel, to strike and for sanctions (doc. no. 22) is dismissed as moot.

17

machine in the MMR room with two employees present, she did not violate the rule. The policy, however, is clear: "We will no longer run with only two individuals in the MMR environment at any time...." Plaintiff allowed two employees to run one or more machines in the MMR environment. Plaintiff's conclusory statement does not create any material fact issue. Plaintiff's further attack on the policy by claiming it exceeds Federal Reserve System requirements does not create a material fact issue. The Federal Reserve Bank of Dallas opted to implement a more stringent policy in light of the past theft that had occurred. The Bank is not prohibited from implementing any such policy and such a policy was not implemented with any retaliatory motive towards Plaintiff.

Inasmuch as Plaintiff presents no competent summary judgment evidence to rebut Defendant's proffered reason for her discharge and there exists overwhelming evidence that Plaintiff was fired because she violated the Bank's policy regarding the MMR environment, Defendant's motion for summary judgment regarding Plaintiff's Title VII/section 1981 retaliation claims is granted.

## Conclusion

The Court accepts the Magistrate Judge's Memorandum and Recommendation on all claims asserted by Plaintiff but to which she filed no objections. The Court grants the Defendant's motion for summary judgment (doc. no. 17) on all remaining issues. Defendant's motion to compel, to strike and for sanctions (doc. no. 22) is dismissed as moot.

It is so ORDERED.

SIGNED this 18th day of January, 2012.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE